```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                       SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5                  Plaintiff,

 6   -v-                                      Case No. 10-20166

 7

 8   D-1  JERMAINE LOVE JACKSON,

     _____/
 9                  Defendant.

10

11                  SENTENCING, VOLUME 2

12           BEFORE THE HONORABLE MARK A. GOLDSMITH

13         Flint, Michigan, Tuesday, June 7th, 2011.

14

15   APPEARANCES:

16
     FOR THE PLAINTIFF:        CRAIG F. WININGER
17                             U.S. DEPARTMENT OF JUSTICE
                               600 Church Street, Room 210
18                             Flint, MI 48502

19

20   FOR THE DEFENDANT:        RICHARD D. KORN
                               645 Griswold Street
21                             Suite 1717
                               Detroit, MI  48226
22

23

24   David B. Yarbrough, CSR, FCRR
     Official Court Reporter
25   (313) 410-7000
```

TABLE OF CONTENTS

                                                                    PAGE

WITNESSES:

NONE




EXHIBITS

NONE

```
1          Flint, Michigan
2          Tuesday, June 7th, 2011.
3          At or about 9:57 a.m.
4                    --     ---     --
5          THE CLERK OF THE COURT:  The Court calls case number
6    10-20166, defendant one, United States of America versus
7    Jermaine Love Jackson.  Counsel, please state your appearances
8    for the record?
9          MR. KORN:  Good morning, your Honor.  Richard Korn
10   appearing on behalf of Mr. Jackson who is present with his wife
11   and his mother.
12         (Pause)
13         MR. WININGER:  Good morning, your Honor.  On behalf
14   of the United States, Craig Wininger.  I apologize for walking
15   into your Court tardy, your Honor.  I hoped to grab the brief
16   so we could address some of the issues today.
17         THE COURT:  All right.  This is the date and time to
18   resume the sentencing of the defendant.  We started our
19   sentencing proceeding last week and an issue arose dealing with
20   whether to assign any criminal history points for a delayed
21   sentence in a prior case that involved the defendant.  I
22   adjourned the sentencing at that time to give both sides an
23   opportunity to present the Court with any authority on the
24   issue.  There any authority either side wants to draw to my
25   attention?
```

1     MR. KORN:  Your Honor, I have no additional authority

2 to put before the Court.  I will rest with respect to that

3 issue on the argument in my sentencing memorandum and the plain

4 language of the guidelines.

5     THE COURT:  All right.  Anything for the government?

6     MR. WININGER:  No, your Honor.  Beyond the

7 supplemental information provided by the probation; that is,

8 their supplemental report as well as the order, the actual copy

9 of the order delaying sentence in defendant's case, his

10 underlying Genesee County case, the government has nothing

11 additional.

12     THE COURT:  Ms. Collins from probation did send me a

13 letter, I believe everyone has received.

14     MR. KORN:  That is correct, your Honor.

15     THE COURT:  And that's dated June 3, 2011 and it

16 addresses the issue of the order of delayed sentence that was

17 handed down by the Genesee County Circuit Court in case number

18 08-23617-FH and the letter attaches a copy of the order of

19 delayed sentence which I have now reviewed.  Both sides agree

20 that whether we scored two points for that delayed sentence

21 will not impact on the criminal history category; is that

22 correct?

23     MR. KORN:  That is correct, your Honor.

24     MR. WININGER:  Yes, your Honor.

25     THE COURT:  Nonetheless because we do need to do a

1   proper scoring of the guidelines, I'll give you my ruling on

2   that issue.  Under the guidelines, the initial inquiry is under

3   section 4A1.1(d) which provides that the Court is to add two

4   points if the defendant committed the instant offense while

5   under any criminal justice sentence including probation,

6   parole, supervised release, imprisonment, work release or

7   escape status.  When you look to the application notes for that

8   section, a definition for a criminal justice sentence is a

9   sentence countable under section 4A1.2 having a custodial or

10  supervisory component.

11          When you then turn to 4A1.2 under section F,

12  diversionary dispositions, that subsection provides diversion

13  from the judicial process without a finding of guilt, e.g.;

14  deferred prosecution is not counted, a diversionary disposition

15  resulting from a finding or admission of guilt or a plea of

16  nolo contendere in a judicial proceeding is counted as a

17  sentence under 4A1.1(c) even if the conviction is not formally

18  entered except a diversion from juvenile court is not counted.

19          I do find it is a criminal justice sentence that is

20  countable under 4A1.2.  It does have a custodial or supervisory

21  component.  It did follow a plea of guilty as reflected in the

22  register of actions so I do think two points are properly

23  scored.  I believe there are no other guideline issues.  Is

24  that correct?

25          MR. KORN:  That is correct, your Honor.

1      THE COURT:  Do you agree with that?

2      MR. WININGER:  I do agree, your Honor.

3      THE COURT:  Okay.  The guidelines are of course

4  advisory and not mandatory, but we do need to score them.  The

5  base offense level is 28 because the offense does involve at

6  least two kilograms, but less than 3.5 kilograms of cocaine.

7  There are no special offense characteristics, no victim-related

8  adjustment, no adjustment for role in the offense.  There is no

9  adjustment for obstruction of justice and therefore the offense

10  level remains at 28.  There is an adjustment for acceptance of

11  responsibility for a total offense level then of 25, there

12  being no Chapter Four enhancements.  Is everyone in agreement

13  with that?

14      MR. WININGER:  The government agrees, your Honor.

15      THE COURT:  Mr. Korn, are you in agreement with that?

16      MR. KORN:  I am in agreement with that your Honor and

17  I'm sorry, I was conferring with my client.  I -- it's my

18  understanding that the Court is not assessing the two points

19  for the reckless endangerment.  Is that correct?

20      THE COURT:  That's correct.  It was my understanding

21  the government agreed with your position that they should not

22  be assessed.

23      MR. KORN:  Correct.

24      MR. WININGER:  The government agreed it can't meet

25  its burden, your Honor.

```
1              THE COURT:  I'm sorry?
2              MR. WININGER:  The government agreed it cannot meet
3      its burden with respect to those two points.
4              THE COURT:  Now the three prior convictions of the
5      defendant resulted in seven criminal history points, I just
6      ruled the two points are added for this offense having been
7      committed while the defendant was on delayed sentence.  That
8      yields nine criminal history points producing a criminal
9      history category of four.  Everyone in agreement with that?
10             MR. WININGER:  The government agrees, your Honor.
11             MR. KORN:  We agree, your Honor.
12             THE COURT:  All right.  I believe then that with the
13     total offense level of 25 and criminal history category of
14     four, then the guideline imprisonment range is 84 months to 105
15     months, but because of the statutory minimum of 10 years, the
16     sentence must be at least 120 months.  Is everyone in agreement
17     with that?
18             MR. WININGER:  Yes, your Honor.
19             MR. KORN:  Yes, your Honor.
20             THE COURT:  In terms of the sentencing options, under
21     the statute the minimum is 10 years, the maximum is life.  The
22     guideline range was 84 months to 105 months, but there is the
23     statutory minimum of 120 months.  Under the Rule 11 plea
24     agreement, the maximum is the mid-point of the guideline range,
25     but not less than 120 months.  Is that correct?
```

1          MR. WININGER:  That is, your Honor.

2          MR. KORN:  That is correct, your Honor.

3          THE COURT:  I believe that the plea has not yet been

4    accepted -- pardon me, the plea agreement has not yet been

5    accepted by the Court.  The plea agreement was taken under

6    advisement.  I assume both sides are urging me to adopt the

7    agreement; is that right?

8          MR. KORN:  Yes, your Honor.

9          MR. WININGER:  Yes, your Honor.

10         THE COURT:  Okay.  The Court does adopt the and agree

11   to the and accept the Rule 11 plea agreement.  The statute

12   provides for at least eight years of supervised release.  I

13   assume the maximum then would be life.  Is that correct?

14         MR. WININGER:  It is, your Honor.

15         MR. KORN:  Yes, your Honor.

16         THE COURT:  And then the guideline recommendation

17   then is supervised release of at least eight years.  Probation

18   not authorized under the statute nor under the guidelines.  The

19   fine under the statute is the maximum of four million dollars,

20   guideline range is 12,500 to four million dollars.  Mandatory

21   assessment fee is 100 dollars.  Restitution is not applicable.

22   All right, I'm going to entertain any argument from Mr. Korn

23   and the defendant is entitled to address me directly regarding

24   sentencing and then we'll hear from the government.

25         MR. KORN:  Your Honor, would you like us to do that

1    from the table or from the podium?

2            THE COURT:  Whatever is more comfortable for you.

3            MR. KORN:  We'll go up to the podium.  Your Honor,

4    with respect to sentencing, I understand that, I understand

5    that there is a, umm, 10 year minimum, mandatory minimum

6    sentence in this matter, but I would like to say something

7    about Mr. Jackson and that is that it's been an interesting

8    experience representing Mr. Jackson.  Our life experiences are

9    very different.  Our perspectives about life are very

10   different, but we do share a common bond and this is where I

11   have been very impressed with Mr. Jackson.  I know in my own

12   life, this is true, but I've been representing Mr. Jackson

13   since July of 20 -- of 2010, it's almost a year now and one

14   thing that's always impressed me about Mr. Jackson and it's

15   something that I went through in my own life is I feel like he,

16   he has reached a point in his life where he's looking back at

17   his life and what he's done and realizes that he's just too old

18   to keep doing this.

19           He has a 13 -- he's married, he has a 13-year-old

20   daughter who he loves very much.  He has a wife who's in the

21   courtroom who he loves and he has a mother who he's very close

22   to and I understand that in terms of the Statute of Limitations

23   and the prosecution and all the rest of it this is not an old

24   case, but for Mr. Jackson it's an old case.  This happened in

25   2009.  Subsequent to this offense being committed, he was

1  sentenced on another matter to prison in the Michigan, with the

2  Michigan Department of Corrections.  He went to prison after

3  this, after this happened, he went to prison and that's where I

4  think he really began to realize that he just can't keep doing

5  what he's doing.

6         He got out of prison and I spoke with his probation

7  officer and she told me that he complied with all the

8  conditions of his parole, that and he's still on parole, but he

9  complied with all the conditions of his parole.  Then in July

10 when he was arrested on this offense in July of 2010, he was

11 allowed to return home on bond and has been on pretrial release

12 since July of 2010 and as far as I know, he's complied with all

13 the conditions of pretrial release.

14        He's working very hard.  He, he has a tough job.  He

15 works like six, 7:00 at night is when he reports to work and he

16 doesn't come home until almost 6:00 in the morning and he works

17 six or seven nights, days a week cleaning offices.  He's been

18 on tether so he's been really confined except when he's out

19 working he's been confined to his home and he recognizes that

20 he has to pay the price.  He recognizes that he was involved in

21 this stuff and he's got to pay the price, but he also

22 recognizes when he gets out and it's a long time from now, 10

23 years is a long time, but when he gets out, he really, he's

24 done with it.  He wants to spend the rest of his life being a

25 devoted father which he is, a devoted husband and if

1    circumstances allow, he wants, he wants to, umm, be a devoted

2    son and take care of his mom if she needs it.  All I can say is

3    I've been very impressed with his attitude about his life and I

4    would ask the Court under the circumstances of this case to

5    sentence Mr. Jackson to the mandatory minimum sentence of 120

6    months.

7           THE COURT:  All right.  Mr. Jackson, anything you

8    want to tell me regarding sentencing?

9           THE DEFENDANT:  No, sir.

10          THE COURT:  All right.  Let's hear from the

11   government then.

12          MR. WININGER:  Your Honor, I don't think argument is

13   necessary here.  I'd ask the Court to sentence the defendant to

14   120 months with the Bureau of Prisons.

15          THE COURT:  The Court takes into account all of the

16   factors required under Title 18 United States Code, Section

17   3553 in fashioning a sentence that is sufficient, but not

18   greater than necessary to comply with the purposes that are set

19   forth in paragraph A2 of the statute.  The factors that the

20   Court takes into account are the nature and circumstances of

21   the offense, the history and characteristics of this defendant,

22   the need for a sentence to reflect the seriousness of the

23   offense, to promote respect for the law, to provide just

24   punishment, to afford adequate deterrence to criminal conduct,

25   to protect the public from further crimes of this defendant, to

1   provide the defendant with needed educational or vocational

2   training, medical care or other correctional treatment in the

3   most effective manner.

4          This Court takes into account the variety of

5   sentences that are available as set forth earlier by the Court

6   in its colloquy with the attorneys.  The Court also takes into

7   account the guideline range that the Court addressed earlier as

8   well as any pertinent policy statements and also takes into

9   account the need to avoid unwarranted sentence disparities

10  among defendants with similar records who have been found

11  guilty of similar conduct.

12         The defendant has pled guilty to conspiracy to

13  distribute cocaine.  That is a serious offense as reflected by

14  the fact that under the statute, the crime has a mandatory

15  minimum of 10 years with a maximum penalty of life in prison.

16  Our society is ravaged by drugs and those who traffic in drugs

17  therefore are undermining the very fabric of our society.  It's

18  for that reason that Congress has enacted substantial penalties

19  for those who traffic in drugs so there can be no minimizing of

20  the seriousness of the nature of this offense.

21         The defendant unfortunately is no stranger to the

22  criminal justice system.  The Court has taken into account the

23  criminal history of this defendant.  He's had a conviction for

24  possession of a loaded firearm.  He's also had a second firearm

25  possession and a possession of marijuana and possession of

1    cocaine.  Also possession with intent to deliver less than 50

2    grams of cocaine.  Despite significant periods of

3    incarceration, the defendant continued to re-offend and that's

4    what brings him before the Court today.

5         The Court intends to announce its sentence, will give

6    the attorneys an opportunity to state whether there's any legal

7    reason why the Court should not impose that sentence.  The

8    Court intends to go along with the plea agreement and sentence

9    the defendant to the statutory minimum of 120 months and also

10   intends to impose supervised release of eight years.  No fine

11   and no restitution, but a special assessment is mandatory of

12   100 dollars.  Does either attorney have any legal basis why the

13   Court should not or may not impose that sentence?

14        MR. KORN:  No, your Honor.  The only thing I would

15   ask at this time is if the Court would consider recommending

16   and it's just a recommendation, but if the Court would consider

17   recommending placement in a comprehensive drug program.  It's

18   clear from the presentence report that he has had a long

19   history of substance abuse and I think it would be available

20   and he's willing, it would be beneficial and he's willing to

21   avail himself of any drug treatment program that the Bureau of

22   Prisons has to offer and unfortunately his sentence is long

23   enough so that he can take advantage of the program.  It's my

24   understanding it's like a two and-a-half year waiting list for

25   the program so if the Court would recommend that, he certainly

1   would appreciate that.

2          THE COURT:  Yes, it's my intention to do that.

3          MR. KORN:  Thank you, Judge.

4          THE COURT:  All right.  Any else?

5          MR. WININGER:  Your Honor, I have no legal objection

6   to the sentence.

7          THE COURT:  All right.  Pursuant to the Sentencing

8   Reform Act of 1984 and having considered the sentencing

9   guidelines as well as all the factors contained in Title 18

10  United States Code, Section 3553 (a), the Court imposes the

11  following sentence:  It commits the defendant to the custody of

12  the United States Bureau of Prisons for a term of 120 months.

13  The Court recommends that the defendant be designated to an

14  institution with a residential drug abuse treatment program.

15         Defendant is ordered to pay a special assessment of

16  100 dollars due immediately.  The Court waives imposition of a

17  fine and the cost of incarceration, cost of supervision due to

18  the defendant's lack of resources.

19         The Court imposes mandatory drug testing.  Upon

20  release from imprisonment, the defendant will be placed on

21  supervised release for a term of eight years.  While on

22  supervision he shall abide by the standard conditions as set

23  forth by United States District Court for the Eastern District

24  of Michigan as well as the following special conditions:  Due

25  to the nature of the instant offense and his history of

1   substance abuse, defendant shall participate in a program

2   approved by the probation for substance abuse which may include

3   testing to determine if the defendant has reverted to the use

4   of drugs or alcohol.  Defendant shall not use or possess

5   alcohol in any consumable form nor shall the defendant be in

6   the social company of any person whom the defendant knows to be

7   in the possession of alcohol or illegal drugs or visibly

8   affected by them.  Defendant shall not be found in anyplace

9   that serves alcohol for consumption on the premises with the

10  exception of restaurants.

11          In order to meet his financial responsibilities, the

12  defendant shall be lawfully employed on a full-time basis or

13  shall be seeking such lawful gainful employment on a full-time

14  basis.  Full-time basis means 40 hours a week.  Other than

15  advice of appellate rights, is there anything else regarding

16  sentencing?

17          MR. KORN:  Nothing further, your Honor.

18          MR. WININGER:  No, your Honor.

19          THE COURT:  Mr. Jackson, defendants generally have a

20  right to appeal their convictions and sentences, however as

21  part of your Rule 11 plea agreement you waived or gave up your

22  right to appeal.  Those waivers are generally enforceable, but

23  if you believe that the waiver itself is not valid, then you

24  can present that theory to an Appellate Court.  If you do wish

25  to appeal, then you should act promptly because that notice of

1    appeal must be filed within 10 days.  If you are unable to

2    afford an attorney, the clerk of the Court will assist you in

3    preparing the necessary appellate papers.

4         I'm going to order that the presentence report be

5    corrected in accordance with my rulings during our sentencing

6    and that a corrected version of it be forwarded to the Bureau

7    of Prisons and to the United States Sentencing Commission.

8    Copies of the presentence report will be -- will remain

9    confidential in accordance with the practice of our Court.  All

10   right.  Is there anything else?

11        MR. KORN:  May I address the issue of bond at this

12   time?

13        THE COURT:  All right.

14        MR. KORN:  Your Honor, I understand that the statute

15   18 U.S.C., I think it's 3143, if I may have one moment.  It's

16   buried here someplace.

17        (Pause)

18        MR. KORN:  The statute 31, I think it's 3143 says

19   that for a drug offense where the mandatory, where the maximum

20   sentence is 10 years or more, the defendant shall be detained

21   pending the sentence or execution of the sentence, however

22   there is a, sort of an escape clause buried in 18 U.S.C. 3145

23   which I think does give this Court the discretion to under, it

24   says if the Court finds exceptional circumstances, that the

25   Court can allow the conditions of bond to continue and allow

1  Mr. Jackson to self-surrender.  I understand this is a complex

2  issue.

3          With respect to Mr. Jackson, let me say that, again

4  it seems to me that 18 U.S.C. 3145 gives the Court the

5  discretion to allow Mr. Jackson to self-surrender and with

6  respect to his personal circumstances as I pointed out in my

7  sentencing argument, he, ever since he was released from

8  prison, he's been exceptional.  He has complied with all the

9  conditions of his parole.  He's been working very hard.  He's

10  complied with all the conditions of pretrial release in this

11  Court and he's on tether, so he's been confined to home which I

12  would ask to continue until it's time for him to

13  self-surrender.  I think the bottom line is that under the

14  circumstances of this case and under his circumstances and what

15  he's trying to do with his life, he deserves that opportunity.

16  I know it's only a few weeks, sometimes a month, sometimes a

17  month and-a-half, but I also know from representing other

18  people, those few weeks are very, very important to people

19  especially when they're looking at significant terms of

20  imprisonment.

21          The other thing I would ask the Court to consider is

22  technically the statute says he should have been locked up when

23  he pled guilty and he wasn't and there's never been any

24  allegation from anybody that he was a danger to the community

25  or a flight risk or anything like that and so I would ask the

1    Court at least under the circumstances of this case to consider

2    the continuation of bond at the sentencing sort of like the law

3    of the case and just allow Mr. Jackson under the circumstances

4    of this case to self-surrender.  There's no reason to believe

5    that he would do anything but just do what he's been doing and

6    I would ask the Court to allow Mr. Jackson to self-surrender.

7              THE COURT:  All right.  Mr. Wininger?

8              MR. WININGER:  Yes, your Honor.  I think counsel's

9    cited the codes correctly, 18 United States Code 3143 and 18

10   United States Code 3145.  I don't disagree with counsel that

11   this Court has the discretion to determine if exceptional

12   circumstances exist which would warrant the defendant to be

13   allowed to self-surrender.  Where I disagree with counsel is

14   over the complexity of this issue.  I don't think it is a

15   complexed issue, I think it's a fairly straight-forward issue

16   considering this Court's docket.  The issue is in this case

17   have exceptional circumstances been offered which would warrant

18   a self-surrender.

19             I would cite the Court to United States v. Lee, 360

20   Fd 3rd, 401, that's a Second Circuit case out of 2004.

21   Exceptional circumstances exist where there is a unique

22   combination of circumstances giving rise to situations that are

23   out of the ordinary.  I would also cite the Court to

24   United States v. Little, 485 Fd 3rd, 1210, that's an eighth

25   circuit case from 2007 in which the Eighth Circuit held

1    explicitly it is not exceptional to expect every defendant to

2    timely appear in court and to obey the Court's order concerning

3    pretrial conditions of release.

4         I don't deny that the defendant has appeared in court

5    and complied with his conditions of release.  I think by

6    operation of statute the defendant should be detained.  Mr.

7    Korn has alluded to the circumstances of this case.  This case

8    involved this defendant delivering or conspiring to deliver

9    kilos of cocaine.  It is now a fact of this case that the

10   defendant did so conspire.  He manipulated others in this

11   conspiracy.  He arranged for his co-defendant to accept

12   deliveries of cocaine that weren't to his residence to keep him

13   out of or as removed from the conspiracy as possible.  So I

14   don't think anything about the situation or facts of this case

15   give rise to an exceptional circumstance and I have not heard

16   anything else tendered to the Court or offered to the Court

17   which would, so I'd ask the Court to detain the defendant.

18        MR. KORN:  If I may, your Honor, what's unique and

19   what's exceptional really depends on, on the personal

20   circumstances of the individual and with respect to

21   Mr. Jackson, given where he's come from and given what he's

22   done since he's been released in prison, with respect to

23   Mr. Jackson, it may be what's expected of me or anybody else in

24   this courtroom, but with respect to Mr. Jackson I think it is

25   unique and it is exceptional and I would ask the Court to allow

1    him to self-surrender.

2         THE COURT:  The statute sets out the framework for

3    addressing the request made by defendant through counsel.

4    Congress has determined that for certain classes of defendants,

5    the presumption will be that they must surrender immediately

6    unless they can establish that there are exceptional

7    circumstances to be excused from immediate incarceration.  The

8    Court has addressed this matter on a prior occasion and

9    reviewed the authorities quite extensively at that time.  There

10   have been no briefs submitted in this case, but I think the

11   ground has been plowed fairly well before.

12        The Court's discretion is not unlimited.  It's in

13   fact limited to whether or not there are exceptional

14   circumstances.  What the defendant offers as qualifying as an

15   exceptional circumstance is the fact that he's complied with

16   his bond conditions.  That certainly is commendable, but it's

17   the decision referenced by the attorney for the government,

18   anyone on bond is expected to observe those conditions and

19   there's nothing exceptional about a defendant observing those

20   conditions.  By observing those conditions, the defendant is

21   awarded by being allowed to remain on bond pending the

22   disposition whether by verdict or by acceptance of a plea, but

23   once there is a conviction, then the analysis changes to

24   whether or not there are some exceptional circumstances to

25   justify a continuation of the defendant remaining at liberty.

1          I come to the conclusion that there really isn't any

2    circumstance that qualifies as out of the ordinary.  This

3    defendant will have to serve his sentence and while it's

4    understandable that he'd like to remain at liberty until that

5    time for serving sentence would arrive, wanting to remain at

6    liberty doesn't constitute an exceptional circumstance.

7          In terms of the law of the case argument, I reject

8    that as well.  There was certainly nothing that this Court

9    ruled on that would suggest that the defendant could remain at

10   liberty once the government invoked the statute that

11   presumptively requires incarceration unless exceptional

12   circumstances are shown justifying the defendant remaining at

13   liberty.  So I don't believe that there's any merit to the law

14   of the case argument.  In any case, this Court is bound by the

15   statute, it's not free to deviate from it and I do find that

16   there are no exceptional circumstances that would allow the

17   Court to justify allowing the defendant to remain at liberty so

18   I'm going to order that he be remanded immediately.  Anything

19   else?

20         MR. KORN:  Nothing further.  Thank you, your Honor.

21         MR. WININGER:  No, your Honor, thank you.

22         THE COURT:  All right.  Good luck to you,

23   Mr. Jackson.

24         THE DEFENDANT:  Thank you.

25         (Concluded at 10:44 a.m.)

1                      C E R T I F I C A T E

2

3

4

5

6

7           I, David B. Yarbrough, Official Court

8    Reporter, do hereby certify that the foregoing pages

9    comprise a true and accurate transcript of the

10   proceedings taken by me in this matter on Tuesday, June

11   7th, 2011.

12

13

14

15

16   11/30/2012              /s/ David B. Yarbrough

17   Date                    David B. Yarbrough, CSR, FCRR
                             600 Church Street
18                           Flint, MI  48502

19

20

21

22

23

24

25